DISTRICT OF OREGON, ss:                             AFFIDAVIT OF ALEXANDER LAUB

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Alexander Laub, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since October 2020. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for possible violations of federal law, particularly those found in Title 18 and Title 21 of the United States Code. I have received specialized training from the DEA, to include a 14-week Basic Agent Training course and other training courses. I have been involved in conducting long-term, international and complex conspiracy investigations. Prior to my assignment to the Portland District Office, I spent approximately four years as a law enforcement officer with the Crystal Lake Police Department in Illinois. I am familiar with investigations of drug trafficking organizations (hereinafter, "DTOs"), including identifying methods of importation and distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed. I am also familiar with various tactics used by DTOs to import drugs into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of drugs. I submit this affidavit in support of a criminal complaint and arrest warrant for the following individual and crime:

- **Eliu Ivan CASTEJON GALO** Possession with intent to distribute controlled substances - fentanyl, a Schedule II controlled substance) in violation of 21 U.S.C. § 841(a)(1) and methamphetamine, a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1) both offenses occurring on January 4, 2024.

As set forth below, there is probable cause to believe, and I do believe, that **Eliu Ivan CASTEJON GALO** has violated 21 U.S.C. § 841(a)(1),(b)(1)(A).

2. This affidavit is intended only to show that there is sufficient probable cause for the requested criminal complaint and arrest warrants and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

3. Title 21, United States Code, Sections 841(a)(1), and (b)(1)(A) makes it a crime to possess with the intent to distribute a controlled substance. The maximum penalty is life imprisonment with a mandatory minimum 10 years of imprisonment, a fine of up to $10 million, and up to five years supervised release.

## Sources of Information

4. Cooperating Defendant (CD) (hereinafter CD-1) began providing information to DEA Portland in May of 2023 in hopes of receiving favorable consideration on pending State of Oregon charges of schedule II drug distribution and a felon in possession of body armor. CD-1 is signed up as a cooperating defendant with the Oregon City Police Department ("OCPD") and began working for OCPD in May 2023. CD-1 has been charged and/or convicted of multiple parole violations, giving false information to law enforcement, and distribution of methamphetamine. CD-1 seeks to receive a benefit in terms of a reduction at sentencing for

Page 2 – Affidavit of Alexander Laub

criminal charges and/or at probation/parole violation hearings because of CD-1's assistance to law enforcement on this and other investigations. However, it has been made clear to CD-1 that law enforcement is not offering any promises that a reduction in sentence or favorable treatment at parole/probation hearings will occur. Finally,, CD-1's information has been independently corroborated through several debriefings with investigators and consensually recorded calls. Based on that corroboration, investigators believe the information CD-1 has provided is reliable and credible.

**Statement of Probable Cause**

5. Beginning December of 2023, DEA Portland began an investigation into an individual initially known to investigators as "Suco", who operates as a source-of-supply for fentanyl in the greater Portland metropolitan, Oregon area. This investigation started after an Oregon City Police Department (OCPD) Officer contacted Investigators at the Drug Enforcement Administration (DEA) Portland District Office in regard to information an OCPD source (CD-1) could provide regarding fentanyl distributors. CD-1 stated he/she have previously met with an unidentified individual known to them as "Suco" to purchase fentanyl powder. Then, CD-1 provided the phone number for Suco as, 646-689-9541 (Subject Phone-9541). Based on previous conversations and meeting with Suco, CD-1 believes Suco is a Honduran national.

6. Based on my training, knowledge, and experience, I know that many west Coast cities including the Portland metropolitan area have received a large influx of Honduran nationals over the last several years. In many of these cities, distribution of fentanyl related controlled substances has increased as well as the population of Honduran nationals hired and transported to the U.S. through Mexican Drug Cartels. This influx of fentanyl and Hondurans to

sell it has caused the price of fentanyl to drop substantially over the past few years. In an effort to obtain the identity for the holder of Subject Phone-9541 investigators were able to input the seven-digit number for Subject Phone-9541 into the CashApp application. The name associated with that number was listed as "Carlos Zauceda". CashApp is an application used to electronically transfer funds to and from numerous accounts. Based on my training and experience, investigators often see CashApp used with lower level retail dealers who often receive payment through the application. No other identifiers could be located for Subject Phone-9541. CD-1 advised he/she was willing to introduce an agent acting in an undercover capacity (UC-1) to "Suco" as a potential drug customer looking to purchase fentanyl pills/powder.

### UC-1 Arranges Drug Transaction with "Suco"

7. Starting on December 27, 2023, and while using a recorded phone line, a DEA Special Agent acting in an undercover capacity (UC) began a text message conversation with whom agents believed to be "Suco" over Subject Phone-9541. During the written conversation that occurred in English, the UC introduced themselves and explained how they obtained Subject Phone-9541. Below is a portion of the recorded text message communications.

> UC: *hey its marc from bend… my boy said I could hit you up*
>
> Suco: *hey what's up homie got u*
>
> UC: *thx homie*
>
> UC: *im in bend right now but should come back next week*
>
> (The following day)
>
> UC: *bro can you do 1100 for a boat*
>
> UC: *getting my money right*

Page 4 – Affidavit of Alexander Laub

>Suco: *What's up homie*
>
>Suco: *I sell the boat at 1200, I will come at that price 1100 but if you buy more than one boat bro*
>
>UC: *thx homie… Im looking to get at least 2-3*

8. Based on my training, knowledge and experience, I know that DTO members often utilize vague and/or coded language and brevity in conversation to convey meaning. During the above communications the UC asked Suco "*bro can you do 1100 for a boat?*" I know from my training and experience working fentanyl distribution cases in the District of Oregon that boat is a common term often used to describe a quantity of 1,000 pills. Due to the popularity and demand for counterfeit oxycodone pills that actually contain fentanyl, I know prices have significantly decreased recently but tend to fluctuate from each individual dealer. When Suco replied "*I sell the boat at 1200, I will come at that price 1100 but if you buy more than one boat bro.*" Suco tells the UC that he typically sells a "boat" for 1200 but if the UC is willing to buy more or in bulk then he can drop the price to 1100 per "boat", demonstrating a general price of $1.10 per pill. Based on my training, knowledge and experience I know counterfeit oxycodone (fentanyl pills) pill prices have decreased significantly based on the large number of pills flooding the market. Investigators have learned through experience that most pill prices range from $.90-1.30 per pill in the Portland metropolitan area.

9. Investigators applied for and received a geo-location data warrant for Subject Phone-9541, which was signed by the Honorable Jeffrey Armistead (3:24-mc-6) on January 2, 2024. After receiving the geo-location information for Subject Phone-9541, investigators primarily observed it stay in the North Portland area near. Due to overnight activity of the phone

**Page 5 – Affidavit of Alexander Laub**

being located in the same North Portland area during sleeping hours, investigators believe that Suco lives in that general area. Lastly, the geo-location information provided GPS information with an accuracy of approximately 2000 meters, further complicating investigators attempts to fully identify the holder of Subject Phone-9541.

10. Investigators continued recorded communications with Suco for the purchase of methamphetamine and fentanyl. During that time, Suco agreed to "*1 whole crystal and 4 boats…*" The UC told Suco that they would be coming to Portland to meet with him on January 4, 2023, both parties agreed to a 2:00 p.m, time for the pending drug transaction. As stated above, I know a boat is a common term for 1000 pills. Additionally, the UC asked Suco for one pound of "crystal" and both parties agreed to $1500. Based on my training, knowledge and experience, I know crystal is a common term for methamphetamine due to its crystal or glass like appearance.

### January 4, 2024 - Arrest

11. On January 4, 2024, the UC advised the holder/user of **Subject Phone-9541**, whom agents later identified as **ELIU IVAN CASTEJON GALO,** that they were almost to Portland and were looking for a place to meet. At 1:14 p.m., the UC received a text message stating "4741 NE 14th Pl, Portland, OR 97211." During a subsequent recorded phone call, **CASTEJON GALO** asked the UC to let him know when he arrived at the deal location. Investigators subsequently arrived in the area of the pending drug transaction and began surveillance.

12. The UC then sent a google maps link to **CASTEJON GALO** and advised that he had arrived in the area, **CASTEJON GALO** advised "*K I'm coming.*" At approximately 3:10

Page 6 – Affidavit of Alexander Laub

Case 3:24-cr-00031-SI   Document 1-1   Filed 01/05/24   Page 7 of 9

p.m., investigators observed a young Hispanic male, wearing all black, walking eastbound on NE Prescott, Portland, Oregon. While the UC was speaking with the user of **Subject Phone-9541**, investigators observed a Hispanic male also speaking on and holding a cellular phone while approaching the area of the shared google maps link. After not initially meeting with **CASTEJON GALO** at the area of the shared link, the UC and **CASTEJON GALO** agreed to then meet at the original passed location of 4741 NE, 14th Pl, Portland, Oregon. Investigators used this opportunity to confirm that the Hispanic male was indeed the individual who was there to deliver the agreed upon controlled substances. Investigators observed the same Hispanic male walk to the intersection near 14th Place and NE Wygant St. During this entire sequence of events, investigators continuously monitored the geo-location information for Subject Phone-9541 which showed the phone to be in the same general area that the UC was told to meet. Investigators believe CASTEJON GALO provided the UC with a meeting location that would be within walking distance of his residence to make it easier for him to get to the pending drug transaction.

13. At that time, investigators activated their emergency red and blue lights on their undercover government vehicles and identified themselves as police, while wearing police insignia. **CASTEJON GALO** began running southbound on NE 14th Ave, Portland, Oregon, in an attempt to elude police apprehension. **CASTEJON GALO** was apprehended shortly after and subsequently handcuffed and detained for further investigation.

14. The UC then called Subject Phone-9541 - which rang and was located on the ground near where **CASTEJON GALO** was detained at. Investigators observed a large bulge in **CASTEJON GALO** front hoody pocket and found multiple clear plastic bags containing what

Page 7 – Affidavit of Alexander Laub

appeared to be over 4, 000 small blue hard-pressed pills marked with an "M and 30". The total weight of the pills was approximately 508.7 gross grams. Also found on **CASTEJON GALO** person was a clear plastic bag containing a crystalline substance suspected of being methamphetamine and weighing approximately 476.7 gross grams. Investigators also located clear a clear baggie containing white substance that is suspected of being fentanyl powder weighing approximately 119.2 gross grams. Immigration authorities formally identified the subject as **ELIU IVAN CASTEJON GALO**" a Honduran national who is currently wanted in Clackamas County, Oregon, for failure to appear stemming from controlled substance offenses.

15. A Spanish speaking investigator then read **CASTEJON GALO** his Miranda Warnings from a pre-printed card - which **CASTEJON GALO** stated he understood and was willing to speak with investigators. CASTEJON advised he came to the area to bring 4,000 pills to someone. **CASTEJON GALO** later asked investigators who gave them his phone number. Investigators returned to their office and processed the drugs for evidence, a subsequent field test was utilized on all three suspected drugs. All tests returned presumptive positive for the suspected drugs fentanyl and methamphetamine – schedule II drugs.

## Conclusion

16. Based on the foregoing, I have probable cause to believe, and I do believe, that **Eliu Ivan CASTEJON GALO** has committed the crime of Possession with Intent to Distribute Controlled Substances (fentanyl and methamphetamine) – in violation of 21 U.S.C. § 841(a)(1). I therefore request that the Court issue a criminal complaint and arrest warrant for **Eliu Ivan CASTEJON GALO.**

Page 8 – Affidavit of Alexander Laub

17. Prior to being submitted to the Court, this affidavit, the complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Kemp Strickland. AUSA Strickland advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

_By Phone_
ALEXANDER LAUB
Special Agent
Drug Enforcement Administration

Sworn by telephone or other reliable means at 10:15 ☒a.m./p.m. in accordance with the requirements of Fed. R. Crim. P. 4.1.

_____
HONORABLE JEFFREY ARMISTEAD
United States Magistrate Judge

Page 9 – Affidavit of Alexander Laub